**IN THE U.S. DISTRICT COURT**
**WESTERN DISTRICT OF MISSOURI**

UNIVERSAL UNDERWRITERS
INSURANCE COMPANY

      **Plaintiff,**

v.

EDWARD H. HODGSON, JADE N.
LOUDERMILK and HAYLEY
CRANFILL,

      **Defendants.**

**Case No. 4:09 CV 00669 WAK**

**COMPLAINT**

Plaintiff Universal Underwriters Insurance Company, by undersigned counsel, brings this action for declaratory judgment against the Defendants.

**I.**

**Jurisdiction**

1.     This Court has original "diversity" jurisdiction over this matter pursuant to 28 U.S.C § 1332 and 28 U.S.C. § 2201 (declaratory judgments).

2.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendants reside in this judicial district.

3.     The amount in dispute exceeds $75,000.00 exclusive of interest and costs.

## II.

## Parties

4.      Plaintiff Universal Underwriters Insurance Company ("UUIC") is a Kansas corporation whose principal place of business is located at 7045 College Boulevard, Overland Park, Johnson County, Kansas  66211.

5.      Defendant Hodgson ("Hodgson") is a natural person, an individual residing at 8459 N. 436 Road, Hulbert, Oklahoma, and a former employee of Northtowne Hyundai, Inc. ("Northtowne").

6.      Defendant Jade Loudermilk ("Loudermilk") is a natural person, an individual whose principal place of residence is 6109 N. Euclid, Gladstone, Missouri  64118.

7.      Defendant Hayley Cranfill ("Cranfill") is a natural person, an individual whose principal residence is 6809 North Holmes, Gladstone, Missouri  64118.

8.      All persons who have or claim any interest in the underlying litigation have been joined as parties as required by law.

## III.

## Allegations Common to All Counts

9.      On September 17, 2007, Defendant Hodgson was hired as a porter for Northtowne to assist the sales manager and staff by washing and detailing cars and arranging cars at the dealership.

10.     Northtowne's "Company-Owned Vehicles and Equipment" policy contained in Hodgson's job description provided:

> You are NOT authorized to use company-owned vehicles or equipment for your personal use. NEVER take a company-owned vehicle or company-owned equipment or materials for your personal use under any circumstances. If you do this, you will be Terminated and the Company will file criminal charges against you.

11.     On September 26, 2007, Hodgson signed a written acknowledgment of the "Company-Owned Vehicles and Equipment" policy, and was aware that company vehicles were not to be driven for personal use.

12.     Northtowne's "Job Performance Standards and Company Expectations" policy provided, "[w]ear your seatbelt when driving on the street and obey all Laws at all times."

13.     Defendant Northtowne's "Company Policy Regarding Alcohol and Non-Prescription Drugs" provided:

> The Company does not and will not tolerate the use of any type or sort of alcohol or illegal or prescription drugs that are not prescribed to you personally. In the event you are caught using, or attempting to distribute, or in possession of (on company premises), any type or sort of alcohol or illegal drugs or non-personal prescription drugs, then you will be terminated at once.

14.     On September 26, 2007, Hodgson signed a written acknowledgment of both the "Job Performance Standards and Company Expectations" policy and "Company Policy

3

Regarding Alcohol and Non-Prescription Drugs," and had actual knowledge that drug and alcohol use while driving a company vehicle was strictly prohibited by Northtowne.

15. On September 19, 2008, Hodgson was assigned to perform a "dealer trade" with Suntrup Hyundai in St. Louis, Missouri, whereby he was to drive a Hyundai Accent to St. Louis from Kansas City and exchange it for a 2008 Hyundai Elantra vehicle. Due to the length of the trip, Hodges was directed to drive the Elantra from St. Louis to his home on September 19, 2008 and then drive the vehicle to Northtowne on September 20, 2008.

16. The dealer trade performed by Hodgson on September 19, 2008 was the first occasion in which Hodgson was told to keep a Northtowne vehicle at home.

17. On September 19, 2008, Hodgson was given verbal instructions by his supervisor, Michael Ball, that Hodgson's use of the Hyundai cars were limited to business purposes.

18. Hodgson was given specific directions to drive the Hyundai Elantra directly from Suntrup in St. Louis back to his residence. His authorization to operate the vehicle was limited to going to St. Louis and returning to his residence.

19. Without Northtowne's knowledge, Hodgson invited Defendants Loudermilk and Cranfill to accompany him on his trip to St. Louis and to do so for the purpose of his personal entertainment.

20. After leaving the Northtowne dealership with the vehicle, Hodgson drove to his apartment and picked up Loudermilk and Cranfill before driving to St. Louis.

21. Upon arrival in St. Louis, Hodgson traded vehicles at the Suntrup dealership as assigned.

22. Before returning to Kansas City, Hodgson, Loudermilk and Cranfill ate a meal at White Castle in St. Louis that Hodgson considered to be off the clock.

23. On the trip back to Kansas City, Hodgson called his friend Sara to wish her a happy birthday. When he found out that she was having a birthday party at a friend's house in Kansas City, he told her he was going to stop by.

24. After learning about the party, Hodgson stopped at a gas station off of I-70 to fill up with gas and buy beer.

25. Shortly after buying the beer, Hodgson, Loudermilk and Cranfill consumed the beer in the vehicle while continuing to drive back to Kansas City.

26. Hodgson and Loudermilk also smoked a marijuana joint inside the vehicle while driving back to Kansas City.

27. Instead of driving the vehicle back to his residence as assigned, Hodgson, accompanied by Loudermilk and Cranfill, drove the vehicle to Sara's party.

28. Hodgson's sole reason for going to the party was because it was his friend Sara's birthday and he wanted to spend time with her.

29. If Sara had not been at the party, Hodgson would not have driven the vehicle to the party.

30. While at the party, Hodgson, Loudermilk and Cranfill consumed more beer.

31. While at the party, Hodgson and Loudermilk smoked more marijuana.

32. After the party, Loudermilk willingly entered the vehicle after having consumed marijuana and multiple alcoholic beverages.

33. After the party, Cranfill willingly entered the vehicle after having consumed multiple alcoholic beverages.

34. After the party, Hodgson was operating the vehicle after having consumed marijuana and multiple alcoholic beverages.

6

35.     On the way home from the party during the early hours of September 20, 2008, the vehicle operated by Hodgson was traveling Southbound on North Brighton Avenue, three-tenths (3/10) of a mile North of its intersection with N.E. Barry Road in Kansas City, Clay County, Missouri.

36.     While on the road, Hodgson admitted to "horsing around" with the vehicle in order to get the feel of hill jumping or being on a roller coaster.

37.     On September 20, 2008, at 1:45 a.m., while he was "horsing around," Hodgson lost control of the vehicle and the vehicle left the roadway, struck the ditch on the East side of North Brighton Avenue and overturned, landing on its top with Hodgson, Loudermilk and Cranfill still inside.

38.     Hodgson did not have Northtowne's permission to operate the vehicle he was driving at the time of the accident because he was instructed to go directly to Suntrup Hyundai, pick up the vehicle and drive directly back to his house and park the car for the evening.

39.     Hodgson cannot say that Mike Ball gave him permission to use the vehicle for his personal activities.  Hodgson made that assumption all by himself.

40.     Defendant Hodgson did not believe that he was working at the time of the party or at the time he was driving home from the party back to his apartment.

41. Defendant Hodgson did not get paid or expect to get paid for the time he was at the party or the time he was driving home from the party back to his apartment.

42. As a result of the accident, Loudermilk and Cranfill brought a civil action for damages alleging negligence on the part of Hodgson and against Northtowne under the doctrine of respondeat superior, a copy of which is attached as Exhibit A.

43. At the time of the accident, Northtowne had insurance coverage under a policy issued by UUIC, a copy of which is attached as Exhibit B.

44. In an answer to opening interrogatories, Hodgson asserts that he is an insured under Northtowne's policy and claims the policy will indemnify him, in whole or in part, against any judgment Plaintiffs may obtain against him.

45. Under UUIC's Policy, the definition of who is insured is limited to "YOU" and "YOUR," as defined in the policy "means the person or organization shown in the declarations as the Named Insured."

46. The UUIC Policy does not provide for coverage for defense costs or indemnity for the claims asserted by Defendants.

8

# III.

## COUNT I – Declaratory Judgment
## Defendant Hodgson is not an insured
## under UUIC's Garage Policy, Coverage Part 500

47.     Plaintiff incorporates the allegations and averments set forth in ¶¶ 1 through 45 of this Petition as if fully set forth herein.

48.     Hodgson is not an insured under the Garage policy for the following reasons:

a.      With respect to injury arising out of the use of an auto owned by Northtowne, Part B.2 of *Who is an Insured* under UUIC's Garage Policy only provides coverage for use of an auto by an employee if the actual use of the auto is within the scope of Northtowne's permission.

(Exhibit B, UUIC Policy No. 275160, p. 500-11.)

b.      With respect to injury arising out of the use of an auto owned by Northtowne, Part B.3 of *Who is an Insured* under UUIC's Garage Policy only provides coverage for a contract driver if that use is within the scope of Northtowne's permission.

(Exhibit B, UUIC Policy No. 275160, p. 500-4, 500-11.)

49.     The conduct of Hodgson at the time of the accident, as set forth herein, was not expressly permitted by anyone with authority at Northtowne.

50.     Northtowne had no knowledge of Hodgson's personal use of the vehicle at the time of the accident.

9

51.     Northtowne never acquiesced to Hodgson's personal use of the vehicle at the time of the accident.

52.     Without knowledge or acquiescence, permission for Hodgson to use the vehicle in the manner set forth herein could not be implied.

53.     The conduct of Hodgson at the time of the accident, as set forth herein, was a material deviation from the purpose for which Northtowne granted Hodgson permission to use the vehicle.

54.     The conduct of Hodgson at the time of the accident, as set forth herein, was a material deviation in direct violation of Northtowne's specific orders.

55.     Hodgson's material deviation in direct violation of Northtowne's specific orders was not within the scope of Northtowne's permission for Hodgson's use of the vehicle.

56.     Because Hodgson did not have Northtowne's permission to use the vehicle in the manner set forth herein, he was not a permissive user within the meaning of the *Who is an Insured* clauses at the time of the accident.

57.     Because Hodgson was not a permissive user at the time of the accident, he is therefore not an additional insured party under Garage Coverage Part 500

Case 4:09-cv-00669-FJG    Document 1    Filed 08/25/09    Page 10 of 13

58.     Plaintiff is entitled to the relief it seeks herein.

**COUNT II – Declaratory Judgment**
**Defendant Hodgson is not an insured**
**under UUIC's Commercial Umbrella, Coverage Part 980**

59.     Plaintiff incorporates the allegations and averments set forth in ¶¶ 1 through 57 of this Petition as if fully set forth herein.

60.     Hodgson is not an insured under the Commercial Umbrella for the following reasons:

    a.     With the respect to any auto and Northtowne's business operations as covered by underlying insurance, Part B of *Who is an Insured* under UUIC's Commercial Umbrella only names Northtowne as the insured.

(Exhibit B, UUIC Policy No. 275160, p. 980-10.)

    b.     With respect to Northtowne's business operations as covered by underlying insurance and the personal use of any auto owned by Northtowne or used in Northtowne's business, Part C of *Who is an Insured* under UUIC's Commercial Umbrella only names K Lawrence LeFever as the insured.

(Exhibit B, UUIC Policy No. 275160, p. 980-10.)

61.     The declaration page included in UUIC's policy regarding Part 980, the Commercial Umbrella, lists K Lawrence LeFever as the only "Designated Person" for this coverage part.

62. Hodgson is not listed as a "Designated Person" for coverage under the Commercial Umbrella.

63. Plaintiff is entitled to the relief it seeks herein.

**Wherefore, these premises considered**, Plaintiff prays this Court enter a judgment in its favor and against Defendants Hodgson, Loudermilk and Cranfill:

a. Declaring that UUIC's Garage Policy, Coverage Part 500, does not provide coverage for Hodgson related to the motor vehicle accident on September 20, 2008, involving Loudermilk and Cranfill;

b. Declaring that UUIC's Commercial Umbrella, Coverage Part 980, does not provide coverage for Hodgson related to the motor vehicle accident on September 20, 2008, involving Loudermilk and Cranfill; and

c. Declaring that UUIC is not obligated to defend or indemnify Hodgson for the claims made by Loudermilk and Cranfill;

d. Declaring that there is no other basis upon which UUIC is obligated to defend or indemnify Hodgson for the claims made by Loudermilk and Cranfill;

d. for its court costs; and

e.    for such other and further relief to which the Plaintiff might show itself entitled which is consistent with Plaintiff's prayer for relief.

Respectfully submitted,

**Case & Roberts P.C.**

s/ Kevin D. Case

Kevin D. Case, MO 41491; KS 14570
Joseph T. Welsh, MO 51515
Randi Helms, MO 60523
Two Pershing Square
2300 Main Street, Suite 900
Kansas City, MO 64108
Tel:   (816) 448-3707
Fax:  (816) 448-3779
kevin.case@caseroberts.com
joe.welsh@caseroberts.com
randi.helms@caseroberts.com
Attorneys for Plaintiff